

FILED

MAY 2 0 2016

CLERK, US DISTRICT COURT
NORFOLK, VA

United States District Court
Eastern District of Virginia
Norfolk Division

Lorenzo Johnson Jr.
1204 Level Green Blvd., Apt 204
Virginia Beach, VA 23464
804.818.7057

v.                                                          Case Number: _2:16 cv 242_

Old Dominion University;
John R. Broderick, President
in his individual capacity;
Carol Simpson, Professor
(Former Provost)
in her individual capacity;
5115 Hampton Blvd.
Norfolk, VA 23529

## COMPLAINT

As more fully set forth herein, Plaintiff brings this action to redress unlawful discrimination, harassment, retaliation, and wrongful termination effected upon him by the Defendants due to his race and repeated, diligent efforts to expose their unlawful practices.

## Jurisdiction

1.    This court has jurisdiction under 28 U.S.C. § 1331. Federal question jurisdiction arises pursuant to 42 U.S.C. § 1983.

2.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343.

complaint                                                                                      1

## Venue

3.    Venue is proper pursuant to 28 U.S.C § 1391 because the events giving rise to this complaint happened in this district.

## Statement of Facts

4.    On or about September 8, 2011, Plaintiff's supervisor, Dr. Ardalan, the Associate Dean, directed his subordinates to begin notifying him via e-mail of their arrival/departure to/from work and to submit a daily work synopsis.

5.    On September 12, 2013, Plaintiff initiated a disparate-treatment grievance alleging the daily work-brief and clock-in/clock-out emails weren't required from his coworkers. He then submitted a request for documents per the grievance procedures to obtain each daily work-report and time-clock e-mail sent by his co-workers to their supervisor from October 8, 2011 to September 12, 2013.

6.    On September 20, 2013, Dr. Ardalan stated officially in his grievance response that "Clock-in/out and daily work brief is required from both of the employees..."

7.    On October 18, 2013, the Office of Employment Dispute Resolution (EDR), specifically Director Chris Grab, issued a compliance ruling indicating Plaintiff was entitled by grievance-procedure rules to the documents sought, but the request was "unduly burdensome" and the agency had already provided "conclusive information" and the requested documents "would not appear to provide any material information".

8.    On or about October 20, 2013, Dr. Ardalan completed Plaintiff's annual performance evaluation, assigning no below-average ratings and an overall rating of "Contributor".

9.    On or about October 22, 2013, After calling the EDR Advice Line, coincidentally speaking with Chris Grab, Plaintiff modified the scope of the document request from two years to six months and asked it be reconsidered, stating in part "The existence of the documents is the material information—and their existence is unproven."

10.   On October 29, 2013, EDR, specifically Chris Grab, declined to reconsider the document request.

11.   On November 19, 2013, Dean Gilbert Yochum stated officially in his second-step grievance response, "Mr. Johnson's assertion is not correct...Both are required to clock in/out daily and file a daily work brief..."

12.   On December 2, 2013, the Provost, Dr. Carol Simpson, stated officially in her third-step grievance response, "There is no merit to this grievance."

13. On or about January 14, 2014, EDR appointed a hearing officer, Ternon Lee, to adjudicate the September 12 grievance.

14. On February 10, 2014, the hearing officer, relying upon the prior EDR rulings, denied Plaintiff's request for the documents.

15. On February 11, 2014, Plaintiff filed a discrimination charge with the EEOC.

16. On February 14, 2014, Plaintiff appeared in General District Court to obtain a writ of mandamus to compel the University to provide the requested documents.

17. On March 6, 2014, Plaintiff appeared in General District Courts seeking an injunction to enjoin the University from deleting the requested documents.

18. On March 6, 2014, the hearing officer ordered the University to produce the documents Plaintiff had long and doggedly sought. The University could not produce clock-in emails for the other similarly situated employee, as he had not, contrary to the grievance respondents' statements, been required to submit clock-in emails to their supervisor, Dr. Ardalan.

19. On March 14, 2014, Plaintiff requested the hearing officer enforce full compliance to her the document order. She denied the request.

20. On March 20, 2014, Plaintiff withdrew under protest.

21. On April 17, 2014, the Provost issued the Plaintiff a memorandum, placing him on administrative leave and requiring completion of a Fitness for Duty evaluation before returning to work.

22. On April 17, 2014, Plaintiff initiated a grievance challenging the administrative leave and examination requirement, alleging misapplication of policy and retaliation for exercising protected grievance, FOIA and EEO rights.

23. On April 28, 2014, Plaintiff sent a letter to the University President, John Broderick to inform him of the misapplication of policy and retaliation.

24. On or about May 15, 2014, Plaintiff faxed to EEOC the Provost memorandum and additional documents alleging retaliation.

25. On May 16, 2014, Plaintiff sent another letter to John Broderick informing him of false and misleading statements made by the University in a letter to Dr. Sack, the contracted FfDE provider.

26. On May 28, 2014, the Provost, Carol Simpson issued a Group-II written notice to

Plaintiff for failure to submit to the Fitness for Duty Examination.

27. On July 11, 2014, the University informed the Campus Community via e-mail of a new Fitness for Duty policy, stating it currently had none.

28. On July 14, 2014, the Provost issued a second Group-II written notice to Plaintiff for failure to submit to the Fitness for Duty Examination, terminating his employment with the University.

29. On August 5, 2014, Plaintiff filed a grievance challenging the termination.

30. On September 22, 2014, during the termination grievance hearing, the University asserted the fitness for duty examination was warranted because it expected Plaintiff would not be able to perform the essential duty of communication.

31. On February 3, 2015, Plaintiff filed a charge with the EEOC alleging the University violated the Americans with Disabilities Act (ADA) as it pertains to prohibited medical examinations.

32. On February 19, 2016, the EEOC issued a Notice of Right to Sue re charge 438-2015-00316.

33. On February 24, 2016, the EEOC a issued a Notice of Right to Sue re charge 437-2014-00321.

## Claim I

### Violation of the Americans with Disabilities Act and Title VII
### (42 U.S.C. § 12101 et seq./ 42 U.S.C 2000e et seq)

34. By the acts described above in Paragraphs 21, 26, and 28, Defendant Old Dominion University violated Plaintiff's civil, and statutory rights, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 12101et seq. and 42 U.S.C 2000e et seq.

## Claim II

### Violation of civil rights: Equal protection under the law
### (14th Amendment/42 U.S.C. § 1983)

35. By the acts described above in Paragraphs 12, 21, 26 and 28, Defendant Carol Simpson, under color of law, exercised retaliatory animus and reckless indifference violated Plaintiff's Fourteenth Amendment right to enjoy equal protection under the law, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

## Claim III

### Violation of civil rights: Equal protection under the law
### (14th Amendment/42 U.S.C. § 1983)

36.   By the acts described above in Paragraphs 21, 26 and 28, Defendant John R. Broderick, under color of law, caused or permitted violation of Plaintiff's Fourteenth Amendment right to enjoy equal protection under the law, thereby entitling Plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

## Request for Relief

WHEREFORE, the plaintiff requests:

37.   Equitable relief (Reinstatement).

38.   Back pay, including lost benefits.

39.   Front pay, including benefits.

39.   Compensatory damages, including general and special damages, according to proof;

40.   Punitive damages.

41.   Costs

42.   Any further relief which the court may deem appropriate.

## Demand for Jury Trial

43.   Plaintiff hereby requests a jury trial on all issues raised in this complaint.

Dated: May 20, 2016

By: _____

Plaintiff in Pro Per

complaint                                                                    5